662 S.E.2d 406

The STATE of South Carolina, Respondent,

v.

Colie G. MARTIN, Jr. and Colie G. Martin, III, Appellants.

No. 26496.

Supreme Court of South Carolina.

Heard April 2, 2008.

Decided May 27, 2008.

Brian C. Gambrell, of Hamilton & Associates, of Columbia, for Appellants.

Assistant Solicitor Jill Andrews, of Columbia, and John F. Kuppens, Joann E. Johnston, and A. Mattison Bogan, all of Nelson Mullins Riley & Scarborough LLP, all of Columbia, for Respondent.

Justice WALLER.

This is a direct appeal from two orders of the circuit court which was acting in an appellate capacity to review a magistrate's decision. We reverse and remand to the magistrate court.

## FACTUAL/PROCEDURAL BACKGROUND

The procedural history of this case is a bit convoluted. Factually, the matter started as a criminal investigation with a search warrant issued by a magistrate on August 21, 2003, based on allegations of animal cruelty. On the same date, the magistrate issued an order which placed approximately 60 horses in the protective custody of South Carolina Awareness and Rescue for Equines, Inc. (SCARE). The order stated the following in pertinent part:

> On August 21, 2003 a Search Warrant was issued against the Defendant(s) . . . for the seizure of neglected and mal-treated livestock, including, but not limited to horses.
>
> IT IS ORDERED THAT the livestock, including but not limited to the horses, are [sic] hereby placed in the protective custody of [SCARE], and further that the animals remain on the property for assessment and medial treatment and care, as deemed necessary by SCARE and their [sic] agents.
>
> IT IS FURTHER ORDERED that agents acting for or on behalf of SCARE will have access to these animals for the purposes stated above, and that the removal of these animals are [sic] at the sole discretion of SCARE and its agents.

("August Order").

When the first search warrant was executed on Friday, August 22, 2003, SCARE effectuated an "on-site" seizure of the horses pursuant to the August Order. This allowed for

on-site assessments by veterinarians during the following few days. However, as the week went on, SCARE decided to remove the horses from appellants' property, which happened on Saturday, August 30, 2003.

Pursuant to S.C.Code Ann. § 47–1–150(C)(2) (Supp.2007), a hearing was supposed to be held within three days of the animals' seizure to determine whether the owners were "fit to have custody of the animal." Although a hearing apparently was scheduled for September 16, 2003, no one from the State appeared.[1] On September 17, 2003, appellants moved to vacate the magistrate's August Order. Appellants based their request on due process grounds because there had been no hearing as required by statute.

A hearing on the motion was held on October 1, 2003. The magistrate agreed with appellants' due process argument and found that SCARE had failed to request a post-seizure hearing to determine whether appellants could adequately care for the horses. *See* § 47–1–150(C)(2). As a remedy, appellants sought the immediate return of their horses. The magistrate disagreed and instead ordered SCARE to petition the court for the hearing contemplated by the statute. ("October Order").

Specifically, the magistrate concluded in the written order as follows:

> It is the ruling of this court that S.C.Code § 47–1–150 requires a hearing be sought within 24 hours after the seizure of an animal pursuant to any subsection of this statute. Based on that holding, this court finds that SCARE failed to comply with the requirements of the statute when it failed to petition for a hearing.... **However, the appropriate remedy is the holding of the hearing required by this code section rather than the immediate return of the horses to an environment that could potentially be harmful to them.**

---

1. On September 15, 2003, appellants were arrested on charges related to ill treatment of animals. *See* S.C.Code Ann. § 47–1–40 (Supp.2007). The arrests occurred **after** the seizure of the horses, but prior to this scheduled hearing.

IT IS THEREFORE ORDERED that SCARE shall immediately comply with the hearing requirement of S.C.Code § 47-1-150(C)(2).

(Emphasis added). Prior to that hearing taking place, however, appellants filed for circuit court review of the magistrate's decision.[2]

While the appeal was pending, appellants were indicted in February 2004 on 60 counts each of ill treatment of animals.[3] In June 2004, they were each convicted of four counts, but acquitted on the other 56 counts. They were sentenced in December 2004. Except for the forfeiture of the four horses which were the subject of the convictions, no decision was made on the custody of the other 56 horses.[4]

On February 25, 2005, the circuit court issued a Form 4 order which found that the horses had been properly removed. Appellants filed a motion for reconsideration pursuant to Rule 59(e), SCRCP. The circuit court did not rule on the reconsideration motion until March **2007** when it denied the motion. In the written order, the circuit court found no post-seizure hearing was required, and even so, noted that appellants had "declined" the hearing the magistrate had ordered. These two circuit court orders are the subject of the instant appeal.[5]

---

2. Appellants' counsel at the October 1, 2003 hearing told the magistrate that he was "probably not going to attend the hearing" and instead would file an appeal. Nonetheless, the magistrate indicated he would "set the hearing up."

3. Colie G. Martin, III was indicted for ill treatment, second offense, while Colie G. Martin, Jr. was indicted for conspiracy to commit ill treatment of animals

4. It appears that because the appeal to the circuit court was still pending on the magistrate's decision, the sentencing court did not rule on the other horses, believing it to be a civil matter.

5. Meanwhile, in July 2006, appellants filed a separate civil action against respondent, SCARE, and Janice Carter, SCARE's executive director. In their complaint, appellants alleged replevin, conversion, defamation, malicious prosecution, abuse of process, intentional infliction of emotional distress, negligence, and civil conspiracy. Regarding the horses, appellants sought the return of their horses, including the offspring of the horses that had originally been seized. Apparently, that lawsuit has been stayed pending the outcome of this appeal.

## ISSUES

1. Did the circuit court err by finding that no post-seizure hearing was required under S.C.Code Ann. § 47–1–150(A) or § 47–1–150(C)(1)?

2. Did the circuit court err when it refused to order the return of appellants' horses?

3. Did the circuit court err in finding that appellants had waived their right to a hearing?

## DISCUSSION

### 1. Post-seizure hearing under Section 47–1–150

■ Appellants first argue that the circuit court erred by essentially reversing the magistrate's ruling that a post-seizure hearing was required under section 47–1–150. We agree.

Section 47–1–150 appears in the chapter entitled "Cruelty to Animals" and is entitled "Issuance of search warrant; purpose of section; motions regarding custody of animal; notice; care, disposal of, or return of animal." It is, admittedly, a confusingly drafted statute, which provides in pertinent part:

(A) When complaint is made on oath or affirmation to any magistrate authorized to issue warrants in criminal cases that the complainant believes and has reasonable cause to believe that the laws in relation to cruelty to animals have been or are being violated in any particular building or place, such magistrate, if satisfied that there is reasonable cause for such belief, shall issue a search warrant authorizing [law enforcement] to search such building or place.... If an animal is seized pursuant to this section and the South Carolina Society for the Prevention of Cruelty of Animals, or other society incorporated for that purpose is involved with the seizure, the animal may be held pending criminal disposition of the case at a facility maintained or contracted by that agency.

(B) The purpose of this section is to provide a means by which a neglected or mistreated animal can be:

(1) removed from its present custody, or

(2) made the subject of an order to provide care, issued to its owner by the magistrate or municipal judge, any law enforcement officer, or any agent of the county or of the South Carolina Society for the Prevention of Cruelty to Animals, or any society incorporated for that purpose and given protection and an appropriate and humane disposition made.

(C) Any law enforcement officer or any agent of any county or of the South Carolina Society for the Prevention of Cruelty to Animals, or any society incorporated for that purpose may move before a magistrate for an order to:

(1) lawfully take custody of any animal found neglected or cruelly treated by removing the animal from its present location if deemed by the court that removal is necessary to prevent further suffering or ill-treatment, or

(2) order the owner of any animal found neglected or cruelly treated to provide certain care to the animal at the owner's expense without removal of the animal from its present location, **and shall forthwith petition the magistrate or municipal judge of the county or municipality wherein the animal is found for a hearing, to be set within twenty-four hours after the date of seizure of the animal or issuance of the order to provide care and held not more than two days after the setting of such date, to determine whether the owner, if known, is able to provide adequately for the animal and is fit to have custody of the animal.** The hearing shall be concluded, and the court order entered the date the hearing is commenced. No fee shall be charged for the filing of the petition. Nothing herein is intended to require court action for the taking into custody and making proper disposition of stray or abandoned animals as lawfully performed by animal control agents.

§ 47–1–150 (emphasis added).

The above-emphasized language in section 47–1–150(C)(2) is the hearing requirement at issue. Respondent argues, and the circuit court found, that a post-seizure hearing is not required if the animals are seized pursuant to section 47–1–150(A) or (C)(1), because the language regarding the hearing

is located in section 47–1–150(C)(2), and the sections 47–1–150(C)(1) and (C)(2) are separated by the word "or."

However, we agree with appellants, that a hearing was required.[6] The language in section 47–1–150(C)(2) very clearly contemplates that whether the animal is "seized and removed" (presumably under § 47–1–150(C)(1) and/or arguably under § 47–1–150(A) by search warrant); or the animal is seized but remains on-site for its care (under § 47–1–150(C)(2) which permits an order to provide care to the animal without removing it); a hearing is supposed to be held within three days of the seizure.[7]

Accordingly, we hold the magistrate correctly found that a hearing should have been requested by SCARE under § 47–1–150, and therefore, the circuit court erred in finding no hearing was required.

---

6. We note the August Order issued by the magistrate in effect ordered an on-site seizure by SCARE and also granted SCARE the authority to remove the animals. Arguably, then, the magistrate's order was a hybrid version of what is contemplated by sections 47–1–150(C)(1) and (C)(2).

7. The parties both have cited Florida's version of the statute which has some language that is virtually identical to South Carolina's version, but the statute is formatted differently:

(2) Any law enforcement officer or any agent of any county or of any society or association for the prevention of cruelty to animals appointed under the provisions of s. 828.03 may:
(a) Lawfully take custody of any animal found neglected or cruelly treated by removing the animal from its present location, or
(b) Order the owner of any animal found neglected or cruelly treated to provide certain care to the animal at the owner's expense without removal of the animal from its present location,
and shall forthwith petition the county court judge of the county wherein the animal is found for a hearing, to be set within 30 days after the date of seizure of the animal or issuance of the order to provide care and held not more than 15 days after the setting of such date, to determine whether the owner, if known, is able to provide adequately for the animal and is fit to have custody of the animal. The hearing shall be concluded and the court order entered thereon within 60 days after the date the hearing is commenced. . . .

Fla. Stat. Ann. § 828.073(2). We agree with appellants that Florida's layout of this section indicates that the envisioned hearing relates to both subsection (a) and (b). Likewise, we find the hearing requirement located in § 47–1–150(C)(2) relates to both §§ 47–1–150(C)(1) and (C)(2).

## 2.  Refusal to Return Horses

▪ ■ Next, appellants argue the circuit court erred by not ordering the immediate return of their "illegally seized horses." [8] Appellants contend that because they were acquitted on 56 charges, those 56 horses are not subject to forfeiture. We disagree.

Section 47–1–150(F) provides that whoever takes charge of an animal under the statute:

[S]hall provide for the animal until either:

(1) The owner is adjudged by the court to be able to provide adequately for, and have custody of, the animal, in which case the animal shall be returned to the owner upon payment for the care and provision of the animal while in the agent's or officer's custody; or

(2) The animal is turned over to the officer or agent as provided in Section 47–1–170 and a humane disposition of the animal is made.

In our opinion, section 47–1–150(F)(1) applies to the 56 horses at issue (plus their offspring). Therefore, some type of hearing and fact-finding are required to determine whether appellants are able to adequately provide for the horses. If so, the horses may be returned upon payment for their care. *Id.*

Thus, we reject appellants' contention that the circuit court erred by refusing to order the return of appellants' horses. In addition, we find a remand to the magistrate is necessary to determine whether appellants are now able to adequately provide care for these horses. If appellants are deemed able to care for the horses, the return of the horses may be ordered, provided that appellants make the requisite payments envisioned by section 47–1–150(F)(1).

---

8. Appellants do not challenge the forfeiture of the four horses which resulted from their four convictions. *See* S.C.Code Ann. § 45–1–170 (Supp.2007) (person who is convicted of animal cruelty "forfeits ownership, charge, or custody of the animal and at the discretion of the court, the person who is charged with or convicted of a violation of this chapter must be ordered to pay costs incurred to care for the animal and related expenses.").

### 3. Waiver

Finally, appellants take issue with the circuit court's statement that they "refused" or "declined" their opportunity for a hearing offered by the magistrate. Appellants claim this inappropriately penalizes them for exercising their right to appeal the magistrate's order.

Respondent makes several arguments why this entire appeal should be dismissed, with one argument focusing on waiver.[9] Respondent contends appellants waived their opportunity to have the hearing to which they were entitled by strategically deciding to file an appeal. In support of this argument, respondent cites *Erickson v. Jones St. Publishers, LLC,* 368 S.C. 444, 476, 629 S.E.2d 653, 670 (2006), and other cases, for the general proposition that "a party may not complain on appeal of error or object to a trial procedure which his own conduct has induced."

Although we are somewhat bothered by the fact that appellants did not avail themselves of the post-seizure hearing the magistrate ordered in his October Order, we find appellants arguably were aggrieved by the magistrate's order, and therefore believed they had a right to an appeal.

Accordingly, we decline to dismiss this appeal. Instead, given the somewhat unusual factual and procedural posture of this case, we find the appropriate remedy is a remand for a hearing in front of the magistrate, as discussed above.[10]

### CONCLUSION

In sum, we reverse the circuit court's ruling that appellants were not entitled to a post-seizure hearing. We remand this matter to the magistrate for a hearing to determine whether

---

9. In addition to waiver, respondent argues the appeal is moot and is barred by *res judicata* because the criminal action has been finalized and there was no motion to suppress the evidence seized by the search warrant. We agree with appellants that these claims are without merit.

10. Of course, we note with some irony that this was the initial relief granted to appellants by the magistrate back in 2003.

appellants are able to provide adequately for the animals and are fit to have custody of the animals.

**REVERSED AND REMANDED.**

TOAL, C.J., MOORE, PLEICONES and BEATTY, JJ., concur.